

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

FEB 2 8 2012

CLERK, U.S. DISTRICT COURT
by_____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CARL WASHINGTON, §
§
      Plaintiff, §
§
VS. § NO. 4:11-CV-098-A
§
NATIONAL POSTAL MAIL HANDLERS §
UNION LOCAL 311, DA'MON T. §
TAYLOR, JACK BELL, §
§
      Defendants. §

<u>MEMORANDUM OPINION</u>
and
<u>ORDER</u>

Now before the court is the motion for summary judgment

filed in the above action by defendants, National Postal Mail

Handlers Union Local 311 ("the Union"), Da'Mon T. Taylor

("Taylor"), and Jack Bell ("Bell"). Plaintiff, Carl Washington,

filed a response and appendix, and defendants filed their reply.

Having now considered all of the parties' filings, the entire

summary judgment record, and applicable legal authorities, the

court concludes that the motion should be granted.

II.

<u>Undisputed Facts and Disputed Facts</u>

A.   <u>Undisputed Facts</u>

Plaintiff initiated this action by the filing of a complaint

on February 15, 2011, against defendants.  The litigation arises from the following undisputed facts:

Plaintiff was employed as a mail handler by the United States Postal Service ("USPS") in Fort Worth, Texas.[1]  He was also a member of the Union, the collective bargaining agent that represents the unionized workforce of the USPS.  Taylor and Bell were officers of the Union for the geographic region that included plaintiff; Taylor served as the local president, and Bell served as the local branch president.

The terms of plaintiff's employment were subject to a Collective Bargaining Agreement ("CBA") between the Union and the USPS.[2]  This CBA delineates the procedures for the Union's representation of plaintiff in filing a grievance with the USPS.  With respect to the initiation of grievance procedures, the CBA states under article 15 that a grievance must be initiated by either the employee or the Union within fourteen days of the date in which the employee or the Union first learned of the

---

[1] The parties dispute the date of commencement of plaintiff's employment with the USPS. Plaintiff alleges that he began employment in June 2004 as a mail handler, whereas the Union alleges that he began employment on October 28, 2006.  Compl. at 3; Defs.' Answer at 3.

[2] A copy of the Collective Bargaining Agreement ("CBA") between the Union and the USPS was filed with the court on February 16, 2012, pursuant to the court's order of February 15, 2012. Attach. to Defs.' Feb. 16, 2012 filing.

2

circumstances giving rise to the grievance:

> Step 1: (a) Any employee who feels aggrieved must discuss the grievance with the employee's immediate supervisor within fourteen (14) days of the date on which the employee or the Union first learned or may reasonably have been expected to have learned of its cause. The employee, if he or she so desires, may be accompanied and represented by the employee's steward or a Union representative. <u>The Union also may initiate a grievance at Step 1 within 14 days of the date the Union first became aware of (or reasonably should have become aware of) the facts giving rise to the grievance. In such case the participation of an individual grievant is not required.</u>

Attach. to Defs.' Feb. 16, 2012 Filing (titled "Agreement between the United States Postal Service and the National Postal Mail Handlers Union, AFL-CIO, A Division of the Laborers' International Union of North America, 2006-2011") (hereinafter ("Agreement") at § 15.2, Step 1(a) (emphasis added).

After reviewing the grievance, the USPS issues a decision at the Step 1 level. <u>Id.</u> The Union and the USPS may reach a settlement to resolve the grievance, at which point the USPS supervisor and a Union representative each have the authority to settle the grievance:

> In any discussion at Step 1 the supervisor shall have authority to settle the grievance. The steward or other Union representative likewise shall have authority to settle or withdraw the grievance in whole or in part. No resolution reached as a result of such discussion shall be a precedent for any purpose.

<u>Id.</u> at Step 1(b).

If an adverse decision is rendered at Step 1, the Union may

pursue the case further on appeal through the Step 2 and 3 levels.[3]  Id. at Step 2. The Union may then appeal an adverse Step 3 decision to arbitration at the regional level[4]:

> (d) The Union, at the Regional level, may appeal an adverse decision directly to arbitration at the Regional level within twenty-one (21) days after the receipt of the Employer's Step 3 decision . . . ; provided the Employer's Step 3 decision states that no interpretive issue under this Agreement or some supplement thereto which may be of general application is involved in the case.

Id. at Step 3(d)-(e).

In this case, the Union filed two grievances on plaintiff's behalf.  The first was filed in November 2009 in response to plaintiff's fourteen-day suspension; the second was filed in response to plaintiff's December 2009 termination.

The first grievance arose from a chain of events beginning in fall 2009.  On November 2, 2009, plaintiff was notified of the disciplinary action issued against him on October 30, 2009. Plaintiff was written up for unsatisfactory attendance and placed on a fourteen-day suspension that was to begin on November 21,

---

[3]"The Union shall be entitled to appeal an adverse [Step 1] decision to Step 2 of the grievance procedure within ten (10) days after receipt of the supervisor's decision." Agreement § 15.2, Step 2(d). "The Union may appeal an adverse Step 2 decision to Step 3." Id. at Step 2(j).

[4] Alternatively, the Union may appeal the adverse Step 3 decision to the Step 4 national level of the grievance procedure "[i]f either party's representative maintains that the grievance involves an interpretive issue under this Agreement, or some supplement thereto which may be of general application." Agreement § 15.2, Step 3(d)-(e).  Because there was no interpretive issue at dispute here, this part of the appeal process is not pertinent to the resolution of the motion for summary judgment.

2009, and to end on December 4, 2009.  Because of the suspension, the USPS, through plaintiff's supervisor Randall Love, advised plaintiff that he should return to work on or about December 4, 2009.  Plaintiff met with Union representatives to discuss what action to take on the suspension, but the nature of those discussions is disputed. Plaintiff ultimately decided to leave Texas during the suspension period to go for a vacation in Florida.

The Union timely filed the first grievance on behalf of plaintiff at some point in November 2009.  The Union then entered into a Memorandum of Understanding ("MOU") with the USPS, dated November 24, 2009, that revoked plaintiff's fourteen-day suspension.[5]  Defs.' Mot. for Summ. J., App. at 32, Mem. of Understanding.  Under the terms of the CBA, plaintiff was therefore required to return to work.  Pl.'s Resp. to Mot. for Summ. J., App. at 7.

Plaintiff, however, did not return to work, because he was still vacationing in Miami and Orlando.  Upon his return, the USPS wrote plaintiff up on December 21, 2009, for being absent without leave and recommended him for termination.  Plaintiff was terminated on December 22, 2009.

---

[5] The MOU conditioned the removal of the suspension from plaintiff's files on his satisfactory attendance over a nine-month period. The parties who signed the MOU were Randall Love, attendance control supervisor at USPS, and Allison Shelby, a representative of the Union.

The Union then initiated the second grievance on behalf of plaintiff and pursued the grievance through Steps 1, 2 and 3 of the appeal process.   The Union filed a Step 2 grievance to challenge the termination, and the USPS upheld its decision to terminate plaintiff on February 12, 2010.   The USPS again upheld its termination decision on May 19, 2010, after reviewing the Union's Step 3 appeal. By letter dated June 23, 2010, the Union submitted a request for arbitration to appeal the Step 3 decision.

Plaintiff was scheduled for arbitration in October 2010, but the arbitration did not take place because the Union settled the grievance dispute. On September 15, 2010, plaintiff signed an agreement with the USPS, called a "Last Chance Agreement," that reinstated his employment with the USPS without any back pay and that required him to attend work with minimal absences and tardies.   It is unclear whether plaintiff remains employed with the USPS.[6]

In the complaint, plaintiff asserted claims for breach of duty of fair representation, breach of contract, and gross negligence.   Each claim was based on the allegation that (1) in

---

[6]Although the complaint states that plaintiff was "forced to capitulate to USPS's term to re-gain his employment," Compl. at 6, there are no allegations in the complaint, nor are there any statements in the parties' subsequent filings, that state whether plaintiff remains currently employed with the USPS.

handling the first grievance, defendants failed to give plaintiff notice of the grievance filed on his behalf or the MOU and (2) in handling the second grievance, defendants failed to pursue his case through arbitration. Plaintiff complained that "[a]s a result of Defendant's breach, Plaintiff was without any income for over ten (10) months," and "was forced to capitulate to USPS's terms to re-gain his employment." Id. at 6. As relief, plaintiff sought compensatory damages for lost wages and vacation pay, mental anguish, attorney's fees, and court costs.

B.   Disputed Facts

Although the following facts are in dispute, they are included here to provide context for the remainder of this memorandum opinion and order.

With respect to the first grievance, plaintiff argues that he was not given notice of the grievance filed on his behalf or the MOU until after he had returned from his trip to Florida. Defendants deny that plaintiff was not given notice of the Union's intent to file a grievance. As support, defendants point to evidence to show that union representatives had communicated to plaintiff that the union was obligated to file a grievance within the fourteen-day filing period and that this grievance

would have the effect of revoking the suspension.[7]

With respect to the second grievance, plaintiff maintains that the Union informed him that it would "not be able to represent Plaintiff at arbitration because the reason for Plaintiff's termination was due to the negligence of the Union." Compl. at 4. Defendants reject the claim that the Union's decision not to pursue plaintiff's case through arbitration had anything to do with negligence on its part. Instead, defendants argue that the actual reason that the Union chose not to pursue the grievance further was because plaintiff, through his own fault, had little chance of prevailing at arbitration.

III.

Summary Judgment Motion

Defendants filed for summary judgment on December 21, 2011. Defendants argue that summary judgment is proper on plaintiff's claims for breach of duty of fair representation, breach of contract, and gross negligence. Defendants contend that plaintiff's duty of fair representation claim is barred by the six-month statute of limitations. Even if this claim were not

---

[7] Defendants point to evidence in the record to show that three different union representatives communicated to plaintiff about the grievance: Robert Carroll told plaintiff the Union would be obligated to file a grievance on his behalf to challenge the fourteen-day suspension; Jason Moss reminded plaintiff to go to the Union office after the work day had ended; and Allison Shelby called plaintiff to tell him that the suspension would be revoked and that he needed to go to work. App. in Supp. of Defs.' Mot. for Summ. J. at 18-24, 33-34.

barred, however, defendants contend that the Union has not breached any duty of fair representation but has instead performed in accordance with its obligations under the terms of the CBA; that any state law claims for breach of contract and gross negligence are preempted by federal law; and that any claims brought against the individual defendants Bell and Taylor are similarly barred.

IV.

Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Once the movant has carried its burden under Rule 56(a), the

nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324. See also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" Wiley v. State Farm Fire and Cas. Co., 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences ... in the light most favorable to the [nonmovant]." Boudreaux v. Swift Transp. Co., Inc., 402 F.3d 536, 540 (5th Cir. 2005). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence

of contradictory facts." Id. A reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." Id. Thus, the appropriate inquiry on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Septimus v. Univ. of Houston, 399 F.3d 601, 609 (5th Cir. 2005).

V.

Analysis

The court concludes that summary judgment is warranted on all the claims asserted by plaintiff. The summary judgment evidence clearly establishes that the Union acted consistent with the terms of the CBA, and no summary judgment evidence establishes a breach of duty of fair representation, a breach of contract, or an act constituting gross negligence by the Union. Furthermore, there is no summary judgment evidence to support the claims brought against the individual defendants.

The court is not addressing defendants' statute of limitations argument, as that issue is not necessary for the resolution of the motion for summary judgment.[8]

---

[8] Defendants argue that the six-month statute of limitations on plaintiff's claim began in December 2009, when plaintiff was terminated from the USPS. Plaintiff argues that the statute of limitations did not begin to accrue until September 2010, after plaintiff had signed his Last Chance Agreement.

11

A.   Claims Against the Union

    1.   Breach of Duty of Fair Representation

Defendants argue that the summary judgment evidence shows that the Union did not breach its duty of fair representation to plaintiff because its actions were in full compliance with the CBA.  Defendants further argue that the Union properly filed the first grievance to dispute the suspension and reasonably decided not to arbitrate the second grievance.

The court now turns to the standard governing the duty of fair representation.  The duty of fair representation, which is statutorily imposed by federal law, arises out of the relationship between a union and members of a collective bargaining unit, and requires the Union, as the exclusive bargaining agent for USPS employees, to represent fairly all of those employees subject to a collective bargaining agreement with USPS.  See Vaca v. Sipes, 386 U.S. 171, 186 (1967).  A union violates its duty of fair representation only if its conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith, such that it undermined the fairness or integrity of the grievance process.  See id. at 190.

Because plaintiff does not contend that the Union acted in a discriminatory manner, the court will evaluate the Union's conduct under the standards for arbitrary and bad faith conduct.

Under the "arbitrary" prong, a union's actions breach the duty of fair representation "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991). To be non-arbitrary, a decision must be: "(1) based upon relevant, permissible union factors which excludes the possibility of it being based upon motivations such as personal animosity or political favoritism; (2) a rational result of the consideration of those factors; and (3) inclusive of a fair and impartial consideration of the interests of all employees." Tedford v. Peabody Coal Co., 533 F.2d 952, 957 (5th Cir. 1976).

As for the bad faith prong, there is a "demanding standard" of showing bad faith; the conduct must be "sufficiently egregious" or so "intentionally misleading" as to be "invidious," or as to evince a purpose to intentionally harm the membership. See O'Neill v. Air Line Pilots Ass'n, Int'l, 939 F.2d 1199, 1203-04 (5th Cir. 1991). Bad faith conduct has also been described as "the absence of honest purpose and judgment or the presence of hostility or discrimination" by the union. Freeman v. O'Neal Steel, Inc., 609 F.2d 1123, 1128 n.9 (5th Cir. 1980).

Even negligence or an error in judgment does not breach the

high threshold of arbitrary, discriminatory, or bad faith
conduct. Landry v. The Cooper/T. Smith Stevedoring Co., 880 F.2d
846, 852 (5th Cir. 1989). In the interest of effectively
administering the machinery of grievance arbitration, a union is
allowed a broad range of discretion in screening out, settling,
or abandoning grievances before arbitration if it believes in
good faith that the particular grievance does not justify
proceeding through the "costlier and more time-consuming" final
step of arbitration. Vaca, 386 U.S. at 192. An employee
therefore "has no absolute right to have his grievance taken to
arbitration, or to any other level of the grievance process."
Landry, 880 F.2d at 852.

The court now applies the standards of arbitrary and bad
faith conduct to determine whether the Union breached its duty of
fair representation to plaintiff.

        a.   Notice of Grievance

Defendants assert that under the CBA, the Union did not
breach its duty of fair representation to plaintiff, because the
first grievance was timely filed to protect plaintiff's rights as
a unionized employee, and the Union was statutorily required to
make the filing before the deadline elapsed. Additionally,
defendants have put forth evidence, in the form of documents from
the grievance investigation, to show that the Union and

plaintiff's supervisor attempted to advise plaintiff of his
grievance and the lifting of his suspension before he left for
vacation in Florida.  Thus, defendants argue, even though the
Union was not obligated to notify plaintiff of the grievance, the
Union still made substantial efforts to provide such notice to
plaintiff.

Plaintiff denies that the Union ever gave him sufficient
notice of the grievance or the MOU revoking his suspension.  He
argues that defendants' failure to notify him of the grievance
and the MOU directly led to his termination, and that defendants
acted arbitrarily and in bad faith in failing to notify him.  He
relies upon statements in his affidavit and documents from the
grievance investigation to argue that he was not consulted about
the grievance or the signing of the MOU.

The court is satisfied that the Union's filing of the
grievance, irrespective of its alleged failure to notify
plaintiff, was in compliance with the CBA.  The terms of the CBA
indicate that there was nothing irrational or unreasonable about
the Union's decision to file the grievance.  Certainly a union
has been faulted for failing to bring a timely grievance on
behalf of an employee, Lee v. Cytec Indus., Inc., 460 F.3d 673,
677-78 (5th Cir. 2006), or deliberately and unjustifiably failing
to file one at all, see Woods v. Graphic Comm'ns, 925 F.2d 1195,

1202-03 (9th Cir. 1991).  But the court has no reason to conclude
that the Union acted arbitrarily or in bad faith for doing what
it did here, which was to file a timely grievance in accordance
with its duties under the CBA.

Although the parties dispute the issues of whether notice
was given to plaintiff about the grievance and the MOU, these are
not issues of material fact.  Even if the court were to assume
that the Union failed to notify plaintiff about the grievance and
the MOU, the court has not been presented with any evidence from
plaintiff to show that defendants acted arbitrarily or in bad
faith.  Plaintiff has not drawn the court's attention to any case
law or any language in the CBA that requires plaintiff to be
notified or included in the Union's decision to initiate the
grievance.  The language of the CBA clearly states that the
participation of the employee is not required to file a
grievance, and therefore explicitly contemplates the possibility
that the Union could initiate the grievance without plaintiff's
involvement.  Plaintiff has not directed the court to anything in
the summary judgment record to indicate defendant was legally
obligated to notify plaintiff prior to filing the grievance or to
include plaintiff in the settlement agreement.  In fact,
plaintiff basically concedes there was no such obligation, and
admits that the CBA "does not specifically address or create an

16

obligation that the Union informs Plaintiff that it filed a grievance." Br. in Supp. of Pl.'s Resp. to Defs.' Mot. for Summ. J. at 15.

The same is true of plaintiff's complaints concerning the MOU. The language of the CBA does not confer any settlement authority upon plaintiff or require that he sign the MOU for it to be effective. As article 15 of the CBA makes clear, the Union representatives and the USPS supervisor are the only parties with the authority to enter into a settlement agreement after a Step 1 grievance has been filed. Plaintiff does not point to any language in the CBA, nor can the court discern any such language, to indicate that plaintiff had the authority to independently decide whether the grievance should be settled or withdrawn.[9]

Plaintiff therefore has presented no genuine issue of material fact. Even assuming that the Union failed to advise plaintiff of the grievance and the MOU, this alleged failure would not be sufficient to show that the Union had breached its duty of fair representation. Plaintiff has not pointed to any evidence to show that "at the time of the union's actions, the

---

[9]Plaintiff points to statements made by Jack Bell stating that it was "common practice, when discipline is being issued, that the [employee] sign the agreement (MOU)." Pl.'s Resp. to Mot. for Summ. J., App. at 27. Plaintiff, however, omits the remainder of the paragraph, which goes on to state that "in some instances where time restraints . . . would jeopardize the grievance being processed properly, the union must make a judgment call that is deemed to be in the best interest of the member." Id. at 27.

union's behavior [was] so far outside a wide range of reasonableness as to be irrational." <u>Air Line Pilots Ass'n,</u> <u>Int'l</u>, 499 U.S. at 67.  Nor has plaintiff shown, in order to meet the stringent standard for bad faith conduct, that the Union's actions were "sufficiently egregious" or so "intentionally misleading" as to be "invidious," <u>see</u> <u>O'Neill</u>, 939 F.2d at 1203-04, or entirely devoid "of honest purpose and judgment," <u>Freeman</u>, 609 F.2d at 1128 n.9.

In sum, defendants have met their burden to show the absence of any genuine issue of material fact concerning the Union's breach of the duty of fair representation.  Plaintiff has failed to satisfy his burden to adduce evidence to show otherwise.  The court thus concludes that the Union has not breached its duty of fair representation with respect to the first grievance filed on plaintiff's behalf.

b.  <u>Withdrawal of Grievance Before Arbitration</u>

Defendants assert that the Union did not breach its duty of fair representation in deciding not to pursue plaintiff's second grievance through arbitration.  Defendants argue that the Union's representation of plaintiff throughout the appeal was excellent and effective, ultimately resulting in the reinstatement of his employment.  Additionally, defendants contend that the Union's decision not to arbitrate was within its discretion and

consistent with the principles of fair representation; the Union in its best judgment believed that plaintiff would not prevail at arbitration, because he acted unreasonably in leaving the state to take a trip to Florida.

Plaintiff argues that the Union breached its duty of fair representation when the Union decided not to pursue plaintiff's grievance through arbitration. According to plaintiff, the blame for his December 2009 termination lay squarely with the Union, and the Union improperly withdrew the grievance based on a decision that the termination arose from its own errors. Plaintiff insists that the Union should have pursued the grievance further to contest his termination.

The duty of fair representation does not require that the union submit every member's grievance to arbitration without regard to merit. Vaca, 386 U.S. at 191-92 (stating that "a union does not breach its duty of fair representation, and thereby open up a suit by the employee for breach of contract, merely because it settled the grievance short of arbitration."). An employee "has no absolute right to have his grievance taken to arbitration, or to any other level of the grievance process." Landry, 880 F.2d at 852.

The court is satisfied that the Union's decision not to arbitrate plaintiff's case did not breach its duty of fair

representation.  Defendants have introduced summary judgment evidence to show that plaintiff's grievance was appealed through each step described in the CBA, up to the final step immediately before arbitration.  Thus, the Union's disposition throughout the appeals process was fully consistent with the practices under the CBA.

Moreover, the decision to arbitrate plaintiff's grievance was the Union's, not plaintiff's, under the law.  See Vaca, 386 U.S. at 191-92.  Even if the court were to assume as true that the Union withdrew the grievance based on a decision that the termination arose from its own errors, plaintiff has not pointed to any evidence that would support a conclusion that the decision was made arbitrarily or in bad faith.

The court concludes that defendants have met their burden to show the absence of any summary judgment evidence that would raise a genuine issue of material fact as to whether the Union was required to pursue the appeal through arbitration.  Plaintiff has not failed to satisfy his burden to adduce evidence to show that the Union breached its duty of fair representation on this basis.  The claim for breach of duty of fair representation is being dismissed in its entirety.

    2.   Breach of Contract and Gross Negligence Claims

Defendants argue in their motion for summary judgment that

plaintiff's breach of contract and gross negligence claims are preempted by federal law.[10]  As support, defendants point to the Labor Management Relations Act of 1947 ("LMRA"), which they contend preempts plaintiff's state law claims in their entirety. See 29 U.S.C. § 185(a).

Plaintiff argues in his response to the summary judgment motion that these claims as asserted are not preempted because they do not involve the CBA.  He contends the CBA does not specifically address the subject of an obligation of the Union to notify the plaintiff that it has filed a grievance.  The court is not persuaded in the least by this argument.

The only contract referenced in the complaint is the CBA between the Union and USPS.  Plaintiff refers to no other contract that was allegedly breached, and the allegations in the complaint with respect to both claims are explicitly aimed at the CBA.  Moreover, plaintiff has adduced no evidence to establish the existence of any other contract covering the terms of plaintiff's employment.  It is apparent to the court that both of

---

[10]For the breach of contract claim, plaintiff alleged that defendants "breached its duties to Plaintiff when they failed to properly inform Plaintiff that a grievance had been filed, thereby requiring that Plaintiff return to work during the period he was told he was suspended," and that defendants further "failed to pursue arbitration on behalf of Plaintiff due to the fact that Plaintiff's termination was caused by Defendants' negligence."  Compl. at 5.

For the gross negligence claim, plaintiff alleged: "Defendants[] breached its duty to fairly represent Plaintiff when it failed to inform Plaintiff of filing a grievance on his behalf in a timely manner," and "when they failed to represent Plaintiff during arbitration." Id. at 6.

these claims arise from the CBA.

Plaintiff's state law claims are therefore preempted by federal statute. Thomas v. LTV Corp., 39 F.3d 611, 616 (5th Cir. 1994); Medrano v. Excel Corp., 985 F.2d 230, 232 (5th Cir. 1993). The LMRA "provides the requisite jurisdiction and remedies for individual employees covered under a collective-bargaining agreement between that individual's employer and the union." Thomas, 39 F.3d at 616; 29 U.S.C. § 185(A). Federal preemption applies when (1) a decision of a state law claim is inextricably intertwined with consideration of the terms of a collective-bargaining agreement, or (2) the application of state law to a dispute requires interpretation of a collective-bargaining agreement. Thomas, 39 F.3d at 616-17. The breach of contract and gross negligence claims cannot be evaluated without reference to the CBA. Plaintiff's state law causes of action are entirely precluded by the preemptive force of the LMRA. Consequently, both the breach of contract and gross negligence claim beings are dismissed.

B.   Claims Against Individual Defendants

Defendants argue that the claims against the individual defendants Bell and Taylor should be dismissed because these defendants cannot be held personally liable for their conduct undertaken in their capacities as representatives of the Union.

Plaintiff does not dispute in his response to the motion to dismiss that Bell and Taylor should be dismissed for these reasons.

Under the LMRA, individual union officers and representatives are not personally liable for actions performed in their capacities as union officers, representatives, or members.  Atksinon v. Sinclair Refining Co., 370 U.S. 238, 245 (1962).  This bar to personal liability holds true even if the individual union officer's actions were not authorized by the union or were in violation of the CBA.  Complete Auto Transit, Inc. v. Reis, 451 U.S. 401, 416 (1981).  Accordingly, the claims against Bell and Taylor are dismissed.

VI.

Order

Therefore,

The court ORDERS that defendants' motion for summary judgment be, and is hereby, granted, and that all claims and causes of action brought by plaintiff, Carl Washington, against defendants, National Postal Mail Handlers Union Local 311, Da'Mon T. Taylor, and Jack Bell, be, and are hereby, dismissed with prejudice.

SIGNED February 28, 2012.

_____
JOHN McBRYDE
United States District Judge

24